UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Neighbors Opposing Pit
Expansion, Inc.,

    Plaintiff,

          v.                    Case Number: 1:20cv91

                                    Judge Michael R. Barrett

New Richmond Development
Corp., LLC., *et al.*,

    Defendants,

## OPINION & ORDER

This matter is before the Court upon Plaintiff's Motion for Partial Summary Judgment for Defendants' Liability for Interference with and Violation of an Easement (Count 1). (Doc. 62). The motion has been fully briefed. (Docs. 71, 76, 80, 82).

### I. BACKGROUND

Plaintiff Neighbors Opposing Pit Expansion, Inc. ("NOPE") is a nonprofit organization which was formed by residents of Pierce Township, Clermont County, Ohio to protect their land and homes, as well as the environment, from disposal of coal ash at the former Beckjord power plant site ("Beckjord Property"). (Doc. 39, PAGEID 662, ¶ 8-9). Defendants New Richmond Development Corporation and Commercial Liability Partners are owners of the Beckjord Property. (Id., PAGEID 663-65, ¶ 16).

In 1986, Plaintiff entered into a Settlement Agreement with Defendants' predecessor ("1986 Settlement Agreement"). (Id., PAGEID 692). As part of the 1986 Settlement Agreement, Plaintiff was granted a private easement in a defined "Greenbelt Area." ("Greenbelt Easement") (Id., PAGEID 704-705). The easement was "to run with

the land forever" and requires that the Greenbelt Area "remain in a substantially undisturbed state." (Id., PAGEID 705).

It is undisputed that in August 2019, Defendants removed trees from the Greenbelt Area. However, the parties do not agree on the number of trees which were removed and if their removal violated the provision in the easement that the Greenbelt Area shall "remain in a substantially undisturbed state."

Plaintiff moves for partial summary judgment on its claim for Interference and Violation of Easement (Count I) of the First Amended Complaint.[1] Plaintiff argues that Defendants are liable for interfering with and violating Plaintiff's easement by removing trees and causing substantial damage to the Greenbelt Area. Plaintiff seeks a ruling on liability only. (Doc. 62, PAGEID 2533).

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the burden of showing an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving

---

[1] After this case was removed to this Court from the Clermont County Court of Common Pleas, Plaintiff filed another separate action against the same defendants: *Neighbors Opposing Pit Expansion, Inc. v. New Richmond Development Corp., et al*., No. 1:21-cv-792. The two cases were consolidated upon Plaintiff's Unopposed Motion to Consolidate. In the Amended Complaint in this case—the lead case—Plaintiff brings claims for Interference with and Violation of Easement (Count I); Unjust Enrichment (Count II); Breach of the 1986 Settlement Agreement (Count III); Declaratory Judgment (Count IV); and Public and Private Nuisance: (Count V). The remaining claims in this case, as well as the claims originating in the consolidated case (Case No. 1:21-cv-792) are not at issue at this time.

party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## B. Easement

"An easement is 'the grant of a use on the land of another.'" *State ex rel. Wasserman v. Fremont*, 140 Ohio St. 3d 471, 476, 20 N.E.3d 664, 669 (Ohio 2014) (quoting *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231–232, 239 N.E.2d 22 (Ohio 1968)).[2] "The construction of the language of an easement is subject to the rules of contract construction." *United States v. Tri-State Grp., Inc.*, No. 5:06CV597, 2010 WL 271417, at *3 (N.D. Ohio Jan. 15, 2010), *aff'd*, 420 F. App'x 531 (6th Cir. 2011). "When an easement is created by an express grant, as here, the extent of and limitations on the use of the land depend on the language in the grant." 20 N.E.3d at 669. "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 245-46, 374 N.E.2d 146, 150 (Ohio 1978). "Furthermore, where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id*. at 246.

Defendants argue that "substantially undisturbed" in the Greenbelt Easement is ambiguous because it is not defined. In the alternative, Defendants argue that even if

---

[2]The parties agree that Ohio law applies to Plaintiff's claim for violation of easement.

"substantially undisturbed" is not ambiguous, Defendants have not substantially disturbed the Greenbelt. Defendants rely on the Declaration of Mark A. Webber, an expert in the fields of arboriculture and horticulture who inspected the Greenbelt and determined Defendants have not substantially disturbed the Greenbelt.

Plaintiff responds that the plain meaning of "substantially undisturbed" can be interpreted from the Greenbelt Easement itself. Plaintiff relies on an interpretation of the same term by the Sixth Circuit in *Nature Conservancy, Inc. v. Sims*, 680 F.3d 672, 674-77 (6th Cir. 2012) to argue that the intent of the parties was to preserve the property as it was when the Greenbelt Easement was adopted. The easement in *Nature Conversancy* provided that the subject property "will be retained forever substantially undisturbed." *Id*. at 674. The Sixth Circuit found that the filling of a sinkhole on the property violated the plain terms of the easement. *Id*. at 676. To support this interpretation of the easement, the Sixth Circuit pointed to the stated purpose of the easement itself, which was "to assure that the Protected Property will be retained forever substantially undisturbed in its natural condition and to prevent any use ... that will significantly impair or interfere with the Conservation Values of the Protected Property." *Id*. The Sixth Circuit explained that this purpose was reflected in a list of twelve restrictions on the use of the property, including one section covering "Topography." *Id*. After reviewing these provisions in the easement, the Sixth Circuit concluded the easement was "intended to ensure that the overall appearance and topography of the protected property remain substantially unchanged." *Id*.

The Greenbelt Easement does not contain analogous language. The focus of the

4

1986 Settlement Agreement was the disposal of "Utility Waste"[3] by Defendants' predecessors.  The introductory paragraphs of the 1986 Settlement Agreement explain:

> WHEREAS, certain controversies and disputes have arisen between and among the parties hereto concerning the potential use by CG&E of the Tri-State Property and the Heekin Property as areas for disposal of "Utility Waste"

(Doc. 39, PAGEID 695).  The 1986 Settlement Agreement explains that in order to resolve the disputes, the parties developed a plan and "among the purposes of said plan are to provide for the continued disposal activities of CG&E in an environmentally sound manner which takes into consideration the protection of the character of: the Russo Property~ the property of the Tri-State Neighbors; the property of the Heekin Neighbors; and the property of other Pierce Township residents in proximity to the CG&E property."  (Id., PAGEID 696).  The 1986 Settlement Agreement does not specify a purpose for the Greenbelt Easement, but describes the restricted activities as follows:

> CG&E shall make no public utility use of this substantially undisturbed portion of the Heekin Property.  CG&E shall restrict its Utility waste disposal to the area designated "Valley Fill I" and the "Pond Ash Disposal Site" as shown on Exhibit B, except that the parties agree that the boundaries of Valley Fill I may vary by no more than fifty feet from those shown, and that the exact location of the Pond Ash Disposal Site may vary from that shown on Exhibit B provided that it is not located within the Greenbelt area or the Valley Fill I area and further provided that the Pond Ash Disposal Site complies with the requirements of Paragraph 1 [which address the disposal of Utility Waste].

(Id., PAGEID 705).  While Plaintiff maintains that the Greenbelt Area was intended to act as a barrier between residents and the Utility Waste disposal areas (Doc. 39, PAGEID

---

[3]"Utility Waste is defined in the 1986 Settlement Agreement as including "boiler slag, fly ash, bottom ash, pyrites, desulfurization sludge, residues and mixtures of such wastes and all other types of wastes which have been or will continue to be generated at the Beckjord Station as a direct or indirect result of the combustion of fossil fuel used to produce steam for the generation of electricity for the public."  (Doc. 39, PAGEID 696).

666), there is nothing in the plain language of the Greenbelt Easement which brings the removal of trees within the scope of the easement. As one court has explained:

> When the question is the scope of an easement, the court must look to the language of the easement to determine its extent. If there is no specific delineation of the easement in the instrument, or if the delineation is ambiguous, then a court may look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement.

*United States v. Tri-State Grp., Inc.*, No. 5:06CV597, 2010 WL 271417, at *3 (quoting *Murray v. Lyon*, 95 Ohio App.3d 215, 642 N.E.2d 41, 43–44 (Ohio Ct.App.1994)). Because the Greenbelt Easement is silent with regard to activities such as the removal of trees, the term "substantially undisturbed" is ambiguous in this context.

When a term of a contract is ambiguous, ascertaining the parties' intent constitutes a question of fact. *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 138 Ohio App. 3d 57, 74, 740 N.E.2d 328, 340 (Ohio Ct. App. 2000); *see also Columbia Gas v. Bailey*, 213 N.E.3d 138, 164 (Ohio Ct. App. 2023) ("Because the intent of the parties becomes a question of fact when a court finds an ambiguity in the easement language, the trier of fact may rely on extrinsic evidence to ascertain such intent."). Based on the record before the Court, the Court is unable to make a determination regarding the intended scope of the Greenbelt Easement. Accordingly, Plaintiff is not entitled to summary judgment at this stage of the proceedings; and Plaintiff's Motion for Partial Summary Judgment for Defendants' Liability for Interference with and Violation of an Easement (Count 1) (Doc. 62) is **DENIED**.

    **IT IS SO ORDERED.**

                                          */s/ Michael R, Barrett*
                                          Michael R. Barrett
                                          United States District Judge