**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Neighbors Opposing Pit
Expansion, Inc.,

        Plaintiff,

                v.                            Case Number: 1:20cv91

                                        Judge Michael R. Barrett

New Richmond Development
Corp., LLC., *et al.*,

        Defendants,

**<u>OPINION & ORDER</u>**

        This matter is before the Court upon Plaintiff's Motion for Partial Summary Judgment on Defendants' Liability Under Counts I, II, AND III.   (Docs. 90, 91, 92). Defendants have filed a Response in Opposition (Doc. 138); and Plaintiff filed a Reply (Doc. 142).   Thereafter, Plaintiff filed a Notice of Supplemental Authority.   (Doc. 137).

**I.  <u>BACKGROUND</u>**

        Plaintiff Neighbors Opposing Pit Expansion, Inc. ("NOPE") is a nonprofit organization which was formed by residents of Pierce Township, Clermont County, Ohio to protect their land and homes, as well as the environment, from disposal of coal ash at the former Beckjord power plant site ("Beckjord Property").   (Doc. 39, PAGEID 662, ¶ 8-9).   Defendants New Richmond Development Corporation and Commercial Liability Partners are owners of the Beckjord Property.   (Id., PAGEID 663-65, ¶ 16).

        When an electric utility or power plant burns coal to produce electricity, it generates coal ash or coal-combustion residuals ("CCRs").   *Elec. Energy, Inc. v. Env't Prot. Agency*, 106 F.4th 31, 35 (D.C. Cir. 2024) (citing Hazardous and Solid Waste

Management System; Identification and Listing of Special Wastes; Disposal of Coal Combustion Residuals from Electric Utilities, 75 Fed. Reg. 35128, 35137 (June 21, 2010)).   These CCRs contain carcinogens and neurotoxins which have been found to be harmful to humans and the environment.   *Id*.   The Environmental Protection Agency ("EPA") regulates the disposal of CCRs through the Resource Conservation and Recovery Act ("RCRA").   *Id*.   In addition, any citizen may bring a civil action under the RCRA against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" the RCRA.   42 U.S.C. § 6972(a)(1)(A).

In its citizen suit under RCRA, NOPE claims that Defendants' ongoing acts of disposal of coal ash at the Beckjord Property violate the RCRA and its regulations. NOPE's claims are centered on three CCR disposal units, designated Ponds B, C, and C Extension ("Cx").   NOPE maintains that Defendants have triggered the application of the CCR Rule through: (1) the disposal of CCR waste into Ponds C and Cx beginning in 2019 and continuing into the fall of 2021; and (2) piping CCR waste into Pond B from before 2018 and to the present.

NOPE seeks summary judgment to establish Defendants' liability for violating RCRA's prohibition against open dumping, 42 U.S.C. §§ 6944, 6945(a), (Count I); and a declaration that Defendants' acts of disposal have triggered application of the federal CCR regulations at 40 C.F.R. Part 257 Subpart D ("CCR Rule") for the entire Beckjord facility (Counts II and III).[1]

---

[1]After this case was removed to this Court from the Clermont County Court of Common

Defendants respond that: (1) NOPE does not have standing to bring their citizen suit under the RCRA or the CCR Rule; (2) the CCR liability issue is not ripe due to the ongoing regulatory uncertainty for the federal CCR program; and (3) NOPE does not have statutory authority to regulate the Beckjord facility.

## II. <u>ANALYSIS</u>

"Before [a court] can consider the merits of [the plaintiff's] claim or the propriety of the relief requested, … [the plaintiff] must first demonstrate that [it] is entitled to invoke the judicial process."   *Linda R.S. v. Richard D.*, 410 U.S. 614, 616, 93 S. Ct. 1146, 1148, 35 L. Ed. 2d 536 (1973); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that standing is a "threshold question in every federal case.").   "Once standing concerns arise—whether raised by defendants, or *sua sponte* by the Court in meeting its obligation to ensure its own jurisdiction—[the plaintiff carries] the burden to establish that standing requirements are met."   *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").   The plaintiff must support each element of standing "with the manner and degree of evidence required at the successive stages of the litigation" in the same way as "any other matter on which the

---

Pleas, Plaintiff filed another separate action against the same defendants: *Neighbors Opposing Pit Expansion, Inc. v. New Richmond Development Corp., et al.*, No. 1:21-cv-792.   The two cases were consolidated upon Plaintiff's Unopposed Motion to Consolidate.   In the Amended Complaint in the lead case Plaintiff brings claims for Interference with and Violation of Easement (Count I); Unjust Enrichment (Count II); Breach of the 1986 Settlement Agreement (Count III); Declaratory Judgment (Count IV); and Public and Private Nuisance: (Count V).   The citizen suit claims under the RCRA are found in the Complaint in consolidated case (Case No. 1:21-cv-792).

plaintiff bears the burden of proof." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In addition, the plaintiff "'must demonstrate standing for each claim [they] seek[ ] to press.' And they must do so 'separately for each form of relief sought.'" *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022) (quoting *DaimlerChrysler Corp v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)).

"To demonstrate constitutional standing, a plaintiff must satisfy the following three elements: (1) an allegation of an 'injury in fact,' which is a concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical; (2) a demonstration of 'causation,' which is a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a demonstration of 'redressability,' which is a likelihood that the requested relief will redress the alleged injury." *Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 966 (6th Cir. 2009) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). This Court has previously addressed NOPE's standing with regard to the "injury in fact" element and found that Plaintiff had established associational and organizational standing. (Doc.109, PAGEID 7997, 8001).

However, the Court now finds that NOPE is unable to demonstrate the causation and redressability elements necessary to bring a citizen suit to enforce the RCRA and its regulations. The Court's conclusion rests on an almost identical lawsuit brought by a non-profit public interest organization made up of members who "recreate, fish, and own property" in the watershed areas adjacent to a coal ash pond located on property owned

4

by the defendant power company. *Mobile Baykeeper, Inc. v. Alabama Power Co.*, No. CV 1:22-00382-KD-B, 2024 WL 54118, at *3 (S.D. Ala. Jan. 4, 2024), reconsideration denied, No. CV 1:22-00382-KD-B, 2024 WL 3506708 (S.D. Ala. July 22, 2024). The plaintiff, like NOPE, brought a citizen enforcement action under the RCRA's citizens' suit provision, 42 U.S.C. § 6972(a)(1)(A), challenging the power company's closure plan for the coal ash pond. *Id*. at *3. The plaintiff claimed that the closure plan violated RCRA and the CCR regulations. *Id*. The court found that the plaintiff had established injury in fact based on "recreational and aesthetic injuries not just at their personal properties but in the waters immediately surrounding the Plant Barry Ash Pond." *Id*. at *11. However, the court explained:

> what dooms Baykeeper's Complaint on standing grounds is the mismatch between the injuries in fact just described and the conduct it challenges, namely the alleged deficiencies (pursuant to the Federal CCR Regulations and RCRA) in the closure plan for the Plant Barry Ash Pond. Alabama Power began closure-in-place activities in 2019 "and has been working diligently to implement the closure plan" since receiving the ADEM Permit for the Plant Barry Ash Pond. … Baykeeper's problem is that the coal ash pollution about which it complains pre-existed and therefore is not fairly traceable to the challenged action of Alabama Power, the implementation of the closure plan for the Plant Barry Ash Pond.

*Id*. at *12. The court explained further that the plaintiff's "cognizable recreational and aesthetic injuries emanate from Plant Barry's alleged ongoing leaking," but the complaint challenges shortcomings in the current closure plan. *Id*. The court also pointed out that the closure plan was not final and was likely to be amended. *Id*. The court relied upon another "comparable and persuasive" decision from the Middle District of North Carolina which addressed causality and held: "[T]he purported injury here – the diminished use and enjoyment of the Roanoke River Basin ... – is not directly linked to Duke Energy's

preparation of an initial Closure Plan that allegedly fails to comply with the CCR Rule's requirements regarding its contents." *Id*. (quoting *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:17-CV-707, 2018 WL 2417862, at *5 (M.D.N.C. May 29, 2018)).

As to redressability, the court noted that "[o]rdering that Alabama Power file a closure plan for the Plant Barry Ash Pond that satisfies the Federal CCR Regulations and the RCRA could only possibly alleviate a procedural injury, not Baykeeper's concrete injuries in fact." *Id*. at *13. The court also noted:

> But Baykeeper's request that the Court enter injunctive relief "to prevent Alabama Power from implementing this illegal closure plan" is more subtle. ... Still, ordering Baykeeper to execute a closure plan that complies with 40 C.F.R. § 257.102(d)(1)(i-ii) and (d)(2)(i) would not make it "substantially likely" that Plant Barry's coal ash leaching would cease any time soon. *See Duke Power Co*., 438 U.S. at 79. Ordering that Alabama Power eliminate free liquids by removing liquid wastes prior to installing the final cover system would do nothing to address Plant Barry's ongoing groundwater contamination when the system will not be installed until August 2030. (Doc. 27-1 at 191); see 40 C.F.R. § 257.102(d)(2)(i).

*Id*. The court concluded that because the traceability and redressability elements were absent, the plaintiff lacked Article III standing to sue. *Id*. at *14. Given the similarities between this case and NOPE's RCRA citizen suit claims in Counts I, II, and III, the Court concludes that NOPE does not have Article III standing to bring these claims.

## III. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion for Partial Summary Judgment on Defendants' Liability Under Counts I, II, AND III (Docs. 90, 91, 92) is **DENIED as MOOT**; and Plaintiff's claims pursuant to RCRA's citizens' suit provision, 42 U.S.C. §

6972(a)(1)(A), (Counts I, II, and III in Case No. 1:21-cv-792) are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

      **IT IS SO ORDERED.**

                       */s/ Michael R. Barrett*
                    Michael R. Barrett
                    United States District Judge