UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Neighbors Opposing Pit
Expansion, Inc.,

    Plaintiff,

          v.                         Case Number: 1:20cv91

                                          Judge Michael R. Barrett

New Richmond Development
Corp., LLC., *et al.*,

    Defendants,

## OPINION & ORDER

This matter is before the Court upon two Motions for Reconsideration filed by Plaintiff Neighbors Opposing Pit Expansion ("NOPE"). (Docs. 135, 150). These motions have been fully briefed. (Docs. 139, 143, 151, 152, 153, 154).[1]

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion to amend judgment under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir. 1991).[2] There are three grounds for amending a judgment under Rule 59: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615

---

[1] Defendants request that the Court require Plaintiff to seek leave before filing any motion for reconsideration. (Doc. 154, PAGEID 10030). The Court finds that imposing this requirement is not warranted at this time.

[2] As this Court has explained, while Rule 60 is often cited in support of the filing of a motion for reconsideration: "Rule 60(b) applies only to final, appealable judgments." *In re Alpine Partners (BVI) L.P.*, No. CV 2:23-MC-23, 2023 WL 8702933, at *2 (S.D. Ohio Dec. 15, 2023) (citing *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 840 (6th Cir. 2011)).

(6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). However, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir.1992) ("Rule 59(e) motions are aimed at *re* consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued. Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." (internal citations and quotation marks omitted) (emphasis in original)).

Plaintiff maintains that this Court has made clear errors of law. Plaintiff takes issue with (1) the Court's March 30, 2024 Order (Doc. 110) denying Plaintiff's Motion for Partial Summary Judgment for Defendants' Liability for Interference with and Violation of an Easement; and (2) the Court's March 31, 2025 Order (Doc. 145) dismissing Plaintiff's claim under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6944, 6945(a) (Count I) and Plaintiff's claim seeking a declaration that Defendants' acts of disposal have triggered application of the federal coal combustion residuals ("CCR") regulations at 40 C.F.R. Part 257 Subpart D ("CCR Rule") (Counts II and II).[3]

The factual background of this case has been set forth in the above decisions. Therefore, the same will not be repeated here unless necessary to address the arguments

---

[3]In addition to the current matter, Plaintiff filed another separate action against the same defendants: *Neighbors Opposing Pit Expansion, Inc. v. New Richmond Development Corp.*, et al., No. 1:21-cv-792. The two cases were consolidated upon Plaintiff's Unopposed Motion to Consolidate. The claims under the RCRA and its regulations are found in Case No. 1:21-cv-792 (Counts I, II and III).

2

of the parties.

### A. Order on Plaintiff's Motion for Partial Summary Judgment

Plaintiff entered into a Settlement Agreement with Defendants' predecessor (the "1986 Settlement Agreement"). (Doc. 39, PAGEID 692).   As part of the 1986 Settlement Agreement, Plaintiff was granted a private easement in a defined "Greenbelt Area." (the "Greenbelt Easement") (Id., PAGEID 704-705). The 1986 Settlement Agreement provides that the Greenbelt Area "remain in a substantially undisturbed state."   (Id., PAGEID 705). Plaintiff moved for partial summary judgment on its claim that Defendants violated the Greenbelt Easement by removing trees from the Greenbelt Area.   However, this Court found that the term "substantially undisturbed" was ambiguous and there were genuine issues of material fact regarding the intended scope of the Greenbelt Easement.

Plaintiff seeks reconsideration of this determination and argues that the plain language of the Greenbelt Easement makes clear that the Greenbelt Area was to remain in the substantially undisturbed, heavily forested state it was in when the Greenbelt Easement was granted in 1986.   However, this is not the language which appears in the 1986 Settlement Agreement or the recorded Greenbelt Easement itself.   These documents provide:

> CG&E shall grant and convey to NOPE individually and as trustee for the nonexclusive use and benefit of NOPE and the Heekin Property Neighbors an easement for private greenbelt shown as "Greenbelt Area" on Exhibit B and described as the easement attached in Exhibit E. CG&E shall make no public utility use of this substantially undisturbed portion of the Heekin Property. (Doc. 39, PAGEID 704-705) (1986 Settlement Agreement).
>
> The Cincinnati Gas & Electric Company . . . hereby grants and conveys to Neighbors Opposing Pit Expansion, Inc. ("NOPE") individually and as trustee for the non-exclusive use and benefit of NOPE and . . . property

3

owners who own land and/or reside in proximity to the Heekin Property, all of whom shall be collectively referred to as the "Heekin Neighbors" to run with the land forever, an easement for a private greenbelt area to remain in a substantially undisturbed state, designated as "Green Belt Area" and depicted on Attachment 2.   (Doc. 39, PAGEID 685) (Greenbelt Easement).

Plaintiff has not pointed to any language specifying that the Greenbelt Area remain in its "natural" or "forested" state.  Cf. *Nature Conservancy, Inc. v. Sims*, 680 F.3d 672, 676 (6th Cir. 2012) (interpreting language of easement under Kentucky law which stated the purpose of the easement was to assure the protected property was "retained forever substantially undisturbed in its natural condition and to prevent any use ... that will significantly impair or interfere with the Conservation Values of the Protected Property."). The physical nature of the "Greenbelt Area" is not defined or described except for its location.  Moreover, the 1986 Settlement Agreement and the Greenbelt Easement are silent as to the removal of trees.  Cf. *Glass v. Comm'r*, 471 F.3d 698, 703, n.1 (6th Cir. 2006) (interpreting conservation easement which "generally restricts the building, construction, development, or removal of trees on the" encumbered property but "allows for the building of (and removal of trees for) a 3,200–square–foot garage/work space/studio and related access road.").   The only restricted activity referenced is "public utility use" and "Utility waste disposal" by Defendants' predecessor:

> CG&E shall make no public utility use of this substantially undisturbed portion of the Heekin Property. CG&E shall restrict its Utility waste disposal to the area designated "Valley Fill I" and the "Pond Ash Disposal Site" as shown on Exhibit B, except that the parties agree that the boundaries of Valley Fill I may vary by no more than fifty feet from those shown, and that the exact location of the Pond Ash Disposal Site may vary from that shown on Exhibit B provided that it is not located within the Greenbelt area or the Valley Fill I area and further provided that the Pond Ash Disposal Site complies with the requirements of Paragraph 1 [which addresses the disposal of Utility Waste].

4

(Doc. 39, PAGEID 705).[4]  Therefore, the Court must limit its interpretation to the phrase "remain in a substantially undisturbed state."

"The construction of the language of an easement is subject to the rules of contract construction." *United States v. Tri-State Grp., Inc.*, No. 5:06CV597, 2010 WL 271417, at *3 (N.D. Ohio Jan. 15, 2010), *aff'd*, 420 F. App'x 531 (6th Cir. 2011).  Similarly, "[s]ettlement agreements are considered contracts; therefore, their interpretation is governed by the law of contracts."  *Rutherford v. Ingle*, 2009 WL 1372960, *1 (Ohio Ct. App. May 18, 2009) (citing *In re All Kelley and Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 821 N.E.2d 159 (Ohio 2004)).  "If a contract is clear and unambiguous, then its interpretation is a matter of law . . . . However, if the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact."  *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 138 Ohio App. 3d 57, 74, 740 N.E.2d 328, 339–40 (Ohio Ct. App. 2000) (citations omitted).

Ambiguity means the contract language "cannot be determined from the four corners of the agreement" or "the language is susceptible of two or more reasonable interpretations."  *Family Tacos, LLC v. Auto Owners Ins. Co.*, 520 F. Supp. 3d 909, 920 (N.D. Ohio 2021), *aff'd*, No. 21-3224, 2022 WL 17830762 (6th Cir. Dec. 21, 2022) (quoting *CoMa Ins. Agency, Inc. v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013)).

---

[4]The Court notes that this aligns with one of the stated purposes of the 1986 Settlement Agreement: "to provide for the continued disposal activities of CG&E in an environmentally sound manner which takes into consideration the protection of the character of: the Russo Property~ the property of the Tri-State Neighbors; the property of the Heekin Neighbors; and the property of other Pierce Township residents in proximity to the CG&E property." (Doc. 39, PAGEID 696).

"Because contracts must be construed with reference to the ordinary meaning of words, courts may rely upon dictionary definitions to establish their meaning." *Mr. Pulpstone, LLC v. The Shops on 58, LLC*, 2021 WL 6050755, *2 (Ohio Ct. App. Dec. 20, 2021); *see also MaxRelief USA, Inc. v. O'Maley*, 2024 WL 248948, at *4 (S.D. Ohio Jan. 23, 2024) ("Courts traditionally turn to dictionaries to determine the plain meaning of undefined terms in a contract.") (citing *Vandercar, LLC v. Port of Greater Cincinnati Dev. Auth.*, 196 N.E.3d 878, 886 (Ohio Ct. App. 2022)).

Merriam-Webster defines "substantially" as "being largely but not wholly that which is specified" and "undisturbed" as "not altered or interfered with." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary (accessed September 27, 2025). These definitions provide little clarity regarding which activities constitute altering or interfering with that which is specified (*i.e.*, the Greenbelt Area). Therefore, upon reconsideration, the Court once again concludes that the phrase "remain in a substantially undisturbed state" is ambiguous and Plaintiff is not entitled to summary judgment on its claim.

B. **Order dismissing Counts I, II and III**

As the Court explained in its March 31, 2025 Opinion and Order, the Environmental Protection Agency ("EPA") regulates the disposal of CCRs through the RCRA. However, a citizen may bring a civil action under the RCRA against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" the RCRA. 42 U.S.C. § 6972(a)(1)(A). In Counts I, II and III, Plaintiff claimed that Defendants' ongoing acts of disposal of coal

6

ash violated the RCRA and its regulations. However, this Court determined that Plaintiff lacked standing to bring a citizen suit under the RCRA.

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). To establish the causation element, "a plaintiff must show a 'causal connection between the injury and the conduct complained of,' or, in other words, that the injury alleged is 'fairly ... trace[able] to the challenged action of the defendant.'" *Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560). "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 715 (6th Cir. 2015) (quoting *Larson v. Valente*, 456 U.S. 228, 244 n.15, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982)).

In ruling on Plaintiff's Motion for Partial Summary Judgment, this Court concluded that NOPE is unable to demonstrate the causation and redressability elements.[5] Plaintiff argues that this determination conflicts with binding Supreme Court and Sixth Circuit precedent. In addition, Plaintiff has provided the following supplemental authority which

---

[5]In an earlier Order, this Court denied Defendants' Motion to Dismiss based on a lack of associational standing and found that Plaintiff has "adequately alleged imminent harm for purposes of establishing standing at the pleading stage." (Doc. 109, PAGEID 7997).

was decided after this Court denied Plaintiff's Motion for Partial Summary Judgment: *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 1160, 221 L. Ed. 2d 224 (2025) and *Gavin Power, LLC v. Env't Prot. Agency*, Case No. 2:24-cv-00041 (S.D. Ohio Aug. 26, 2025). (Doc. 153).

Plaintiff's main argument is that it was clearly erroneous for the Court to rely on *Mobile Baykeeper, Inc. v. Alabama Power Co.*, No. CV 1:22-00382-KD-B, 2024 WL 54118 (S.D. Ala. Jan. 4, 2024), *reconsideration denied*, No. CV 1:22-00382-KD-B, 2024 WL 3506708 (S.D. Ala. July 22, 2024). As this Court explained in its previous order, *Mobile Baykeeper* is an "almost identical" lawsuit to the case now before the Court. (Doc. 145, PAGEID 9894). In both cases, the issue is whether the plaintiff had constitutional standing. Like NOPE, Baykeeper is "a § 501(c)(3) non-profit public interest organization with members in Alabama and the Mobile Area who 'operate in the watersheds of the Mobile River and the Mobile-Tensaw Delta'" and "recreate, fish, and own property in these watersheds." 2024 WL 54118, *3. Baykeeper, like NOPE, brought a citizen enforcement action under the RCRA's citizens' suit provision, 42 U.S.C. § 6972(a)(1)(A). *Id*. Baykeeper's suit was brought against Alabama Power, who operated a coal-fired generating plant and built a CCR surface impoundment ("Plant Barry Ash Pond") at the plant ("Plant Barry"). *Id*. at *2. Baykeeper claimed Alabama Power's closure plan for the coal ash pond violated the RCRA and the Federal CCR Regulations. *Id*. at *4. Like NOPE, Baykeeper also sought a declaratory judgment that Alabama was violating the open dumping prohibition of the RCRA. *Id*.

The district court in *Mobile Baykeeper* found that the plaintiff had established an

8

injury-in-fact for purposes of standing. The court explained that Baykeeper plausibly alleged that Alabama Power's plant was contaminating the waters adjacent to the plant, which was "causing or contributing to the recreational and aesthetic injuries Baykeeper members currently suffer." *Id*. at *11. However, as the court explained:

> what dooms Baykeeper's Complaint on standing grounds is the mismatch between the injuries in fact just described and the conduct it challenges, namely the alleged deficiencies (pursuant to the Federal CCR Regulations and RCRA) in the closure plan for the Plant Barry Ash Pond. Alabama Power began closure-in-place activities in 2019 "and has been working diligently to implement the closure plan" since receiving the ADEM Permit for the Plant Barry Ash Pond. ... Baykeeper's problem is that the coal ash pollution about which it complains pre-existed and therefore is not fairly traceable to the challenged action of Alabama Power, the implementation of the closure plan for the Plant Barry Ash Pond.

*Id*. at *12. The court explained "the defendant's activity causing Baykeeper's injury (the ongoing leaching of coal ash from Plant Barry into the Mobile River) is curiously not what Baykeeper decided to contest. Instead, Baykeeper challenges Alabama Power's as-yet incomplete closure plan that did not 'factually cause,' and therefore is not 'fairly traceable to,' the complained-of regulatory violations." *Id*. at *13 (quoting *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (citing *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130).

Turning to redressability, the district court observed: "Ordering Alabama Power to implement a closure plan today that both eliminates the post-closure infiltration of liquids and releases of CCR into groundwater and precludes the probability of future impoundment of water, sediment, or slurry cannot redress ongoing leaching when the law only regulates how a CCR unit is closed." *Id*. The court explained that it would:

> not speculate about why Baykeeper brought a citizen suit under Section 6972(a)(1)(A) and not (a)(1)(B). Subsection (a)(1)(A) permits suits "against any person ... who is alleged to be in violation of any ... standard,

9

> regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." *See* 42 U.S.C. § 6972(a)(1)(A). Thus, subsection (a)(1)(A) incorporates the portions of the Federal CCR Regulations governing the closure performance standard for leaving CCR in place under which Baykeeper sues. Meanwhile, subsection (b)(1)(B) permits suits "against any person, including ... [any] past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to the health or environment." *See id.* § 6972(a)(1)(B). It appears that Baykeeper could have avoided the traceability and redressability problems just discussed by suing under subsection (a)(1)(B), which bypasses the Federal CCR Regulations by not incorporating them. Then there would have been no incongruity between Baykeeper's immediate injuries and the avenue for statutory relief against an "owner or operator ... who is contributing to the past or present handling, storage ... or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to ... the environment." Nor would Baykeeper have to challenge the implementation of a closure plan that is and will be in flux and is not the source of the alleged leaching about which Baykeeper complains. But, with the facts as they are, the Court concludes that the traceability and redressability elements are absent, so Baykeeper lacks Article III standing to sue.

*Id*. at *14. This Court reaches the same conclusion here. *Cf. Kentucky Waterways All. v. Kentucky Utilities Co*., 539 F. Supp. 3d 696, 709 (E.D. Ky. 2021) (concluding that an environmental organization and the Sierra Club have met their burden of establishing Article III standing to bring their claim that defendant's coal ash disposal "may present an imminent and substantial endangerment to health or the environment" under 42 U.S.C. § 6972(a)(1)(B)).

Like Baykeeper, Plaintiff also brought its citizen suit under Section 6972(a)(1)(A) and not (a)(1)(B). (Case No. 1:21-cv-00792, Doc. 1, PAGEID 3). In support of its citizen suit, Plaintiff alleges that "Defendants are not following the closure and post-closure requirements mandated by RCRA and federal regulations." (Case No. 1:21-cv-00792,

10

Doc. 1, PAGEID 25).   Specifically, Plaintiff claims that:

> Defendants' ongoing and planned closure activities at the Beckjord impoundments do not comply with the closure requirements in the CCR Rule. Although CLP Defendants have removed at least some of the coal ash from Pond A, upon information and belief, CLP Defendants have not removed the soil that underlay the coal ash in Pond A and have not "decontaminat[ed] all areas affected by releases from the CCR unit" as required by 40 C.F.R. § 257.102(c) for closure of a CCR unit by removal of the CCR.   (Case No. 1:21-cv-00792, Doc. 1, PAGEID 33).
>
> Defendants' planned closures of Ponds B, C, and Cx by leaving the CCR in place do not comply with the closure plan requirements in 40 C.F.R. § 257.102(b) & (d), and in particular with the closure performance standards that the CCR units be closed in a manner that will "[c]ontrol, minimize or eliminate, to the maximum extent feasible, post-closure infiltration of liquids into the waste and releases of CCR, leachate, or contaminated run-off to the ground or surface waters or to the atmosphere," § 257.102(d)(1)(i), and that will "[p]reclude the probability of future impoundment of water, sediment, or slurry," § 257.102(d)(1)(ii). Although CLP Defendants have proposed to close Ponds B, C, and Cx by leaving their coal ash in place with a cover on top, they have not demonstrated that groundwater and other waters (including flood waters) will not continue to flow through the coal ash and result in impounded water, coal ash sediments, and slurry within those unlined basins.   (Case No. 1:21-cv-00792, Doc. 1, PAGEID 33-34).
>
> The CCR Rule violations described above have occurred every day since CLP Defendants acquired the Beckjord Property, on or about February 26, 2018, and continue to occur daily. (Case No. 1:21-cv-00792, Doc. 1, PAGEID 35).

Finally, like Baykeeper, Plaintiff claims that Defendants operate and maintain prohibited open dumps, which is a separate violation of federal law. (Doc. 1, PAGEID 35).

There is very little to differentiate Plaintiff's claims to those brought by the plaintiff in *Mobile Baykeeper*.   While *Mobile Baykeeper* is not binding on this Court, this Court is bound by the same analysis employed by the Southern District of Alabama: whether Plaintiff has satisfied the "irreducible constitutional minimum" requirements of injury in fact, causation, and redressability under Article III.   *Spokeo, Inc. v. Robins*, 578 U.S. 330,

11

338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130) ("Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements.").

This is also the same analysis used in *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:17-CV-707, 2018 WL 2417862, at *3 (M.D.N.C. May 29, 2018), a case cited by the *Mobile Baykeeper* court and this Court in its earlier decision. The plaintiff in Roanoke River was a "non-profit public interest organization[,] with members in North Carolina and Virginia" organized "to establish and carry out a strategy for the development, use, preservation, and enhancement of the resources of the Roanoke River [B]asin." *Id*. at *1. The plaintiff claimed the defendant, the operator of an electricity plan and its two unlined coal ash lagoons, violated the RCRA and the CCR Rule. *Id*. The group alleged that the defendant's unsafe storage of coal ash was reducing the use and enjoyment of the Roanoke River Basin. *Id*. at *4. However, the district court found that there was "no causal nexus between the harms alleged and the challenged conduct of Duke Energy." *Id*. The court explained: "the purported injury here—the diminished use and enjoyment of the Roanoke River Basin, Hyco Lake, the waters of Sargents River, the Dan River, and the waterways into which their waters flow—is not directly linked to Duke Energy's preparation of an initial Closure Plan that allegedly fails to comply with the CCR Rule's requirements regarding its contents." *Id*. at *5. Therefore, the court concluded that the plaintiff lacked standing and dismissed the complaint. *Id*. at **7-8.

*Mobile Baykeeper* and *Roanoke River* are both to be distinguished from this Court's decision in *Gavin Power, LLC v. Env't Prot. Agency*, Case No. 2:24-cv-00041

12

(S.D. Ohio Aug. 26, 2025).  *Gavin Power* also concerned the disposal of coal ash, but the claims were brought by a power company challenging an EPA determination that its closed coal-residual unit violated the EPA's regulations.  (Doc. 60, PAGEID 3115).  The power company claimed that the decision was arbitrary, capricious, or an abuse of discretion.  (Id.)  This Court found that the power company had adequately alleged the necessary elements of standing for its claims under the Administrative Procedure Act based on a reputational-injury theory.  (Doc. 60, PAGEID 3133).  The Court finds this decision largely inapplicable to the instant case.

In *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121 (2025), the producers of gasoline and other liquid fuels sued the EPA, claiming that the EPA's approval of California regulations requiring automakers to produce more electric vehicles and fewer gasoline-powered vehicles violated the Clean Air Act.  The Supreme Court concluded that the fuel producers had standing to maintain their suit.  *Id*. at 2135.  The Supreme Court explained that "[w]hen a plaintiff is the 'object' of a government regulation, there should 'ordinarily' be 'little question' that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries."  *Id*. (citing *Lujan*, 504 U.S. 561); *see also Sierra Club v. Env't Prot. Agency*, 793 F.3d 656, 665 (6th Cir. 2015) ("We have already traced a cognizable injury from EPA's actions through the RACM/RACT provisions to the alleged injuries of the Club's members; we therefore see a clear causal connection. Since the alleged injuries flow from EPA's redesignations, and since the Club asks us to vacate these redesignations, granting the Club's petitions would redress its injuries. Thus, we conclude that Sierra Club has constitutional standing to

13

challenge the EPA's redesignations."). Here, Plaintiff is not the object of a government regulation, but instead brings a claim based on pre-existing coal ash pollution which is not "fairly traceable" to the challenged action of Defendant. *Accord Mobile Baykeeper*, 2024 WL 54118, *12. Therefore, Plaintiffs do not have standing to bring their claim under the RCRA (Count I); or their claim seeking a declaration that Defendants' acts of disposal have triggered application of the CCR Rule (Counts II and II).

Based on the foregoing, Plaintiff's Motions for Reconsideration (Docs. 135, 150) are **DENIED**.

**IT IS SO ORDERED.**

                                                            */s/ Michael R. Barrett*
                                                       Michael R. Barrett
                                                       United States District Judge